1   JODI SIEGNER, Bar No. 102884
    Email Address: jsiegner@deconsel.com
2   VARAND VARTANIAN, Bar No. 265912
    Email: vvartanian@deconsel.com
3   members of
    DeCARLO & SHANLEY,
4   a Professional Corporation
    533 S. Fremont Avenue, Ninth Floor
5   Los Angeles, California 90071-1706
    Telephone (213) 488-4100
6   Telecopier (213) 488-4180

7   ATTORNEYS FOR PLAINTIFFS, CARPENTERS SOUTHWEST
    ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES
8   FOR THE CARPENTERS SOUTHWEST TRUSTS

9               UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

| | |
|---|---|
| 12   CARPENTERS SOUTHWEST | CASE NO. SACV14-0030 JVS (JPRx) |
| 13   ADMINISTRATIVE CORPORATION, a California non-profit corporation; and | COMPLAINT FOR: |
| 14   BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS, | 1.   DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS; |
| 15             Plaintiffs, | |
| 16   v. | 2.   DAMAGES FOR FAILURE TO PAY CONTRACTOR'S LICENSE BOND |
| 17   ARCIERO BROTHERS, INC., a | |
| 18   California corporation, also known as ARCIERO BROS., INC.; | |
| 19   PHILADELPHIA INDEMNITY INSURANCE COMPANY, a | |
| 20   Pennsylvania corporation; and DOES 1 through 10, inclusive, | |
| 21             Defendants. | |
| 22 | |

23                    **JURISDICTION**

24       1.     This is a civil action 1) to recover fringe benefit contributions and

25   liquidated damages, and 2) to recover on a contractors license bond. This action

26   arises and jurisdiction of the court is founded as to section 301 of the

27   Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. §

28   185a, and sections 502 and 515 of the Employee Retirement Income Security Act of



1    1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145.  The court has

2    jurisdiction over the Second Claim for Relief pursuant to its supplemental

3    jurisdiction under 28 U.S.C. §1367.

4                          **PARTIES AND OTHERS**

5         2.    CARPENTERS SOUTHWEST ADMINISTRATIVE

6    CORPORATION, a California non-profit corporation ("CSAC") is a non-profit

7    corporation duly organized and existing under and by virtue of the laws of the State

8    of California.  CSAC's principal place of business is in the County of Los Angeles,

9    State of California.

10        3.    At all relevant times herein, the BOARD OF TRUSTEES FOR THE

11   CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly

12   authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

13        4.    CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS

14   SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining

15   Funds and entities (defined in paragraph nine) with respect to these delinquencies.

16   CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST

17   TRUSTS are sometimes collectively referred to as PLAINTIFFS.

18        5.    The true names and capacities, whether individual, corporate, associate,

19   or otherwise, of defendants named herein as DOES 1 through 10, are unknown to

20   PLAINTIFFS, who therefore sue the defendants by such fictitious names, and

21   PLAINTIFFS will amend this complaint to show their true names and capacities

22   when they have been ascertained.

23        6.    At all relevant times Southwest Carpenters Health and Welfare Trust,

24   Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and

25   Southwest Carpenters Training Fund, were and are express trusts which exist

26   pursuant to section 302 of the LMRA, 29 U.S.C. §186, and multiemployer plans

27   within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

28        7.    At all relevant times the Construction Industry Advancement Fund of

                                    2

1   Southern California, the Residential Housing Contract Administration Trust Fund,

2   the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract

3   Administration Trust for Carpenter-Management Relations, were and are express

4   trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

5        8.   At all relevant times the Carpenters-Contractors Cooperation

6   Committee ("CCCC"), was and is a non-profit California corporation which exists

7   pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92

8   Stat. 2020 (1978), for the purposes set forth in section 302(c)(9) of LMRA, 29

9   U.S.C. § 186(c)(9).

10        9.   CSAC is the administrator of Southwest Carpenters Health and Welfare

11   Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust,

12   and Southwest Carpenters Training Fund, and assignee of the Construction Industry

13   Advancement Fund of Southern California, the Residential Housing Contract

14   Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration

15   Trust, the Contract Administration Trust for Carpenter-Management Relations, and

16   the Carpenters-Contractors Cooperation Committee (collectively, the "PLANS"),

17   and as such is a plan fiduciary within the meaning of section 3 of ERISA, 29 U.S.C.

18   §1002.

19        10.   The duly authorized and acting trustees or directors of each of the

20   PLANS have also assigned to CSAC all their right, title and interest in and to any

21   and all amounts due and owing to the respective PLANS by the employer as herein

22   alleged.

23        11.   Southwest Regional Council of Carpenters and its affiliated local

24   unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners

25   of America, are labor organizations that are a party to the collective bargaining

26   agreements involved.

27        12.   At all relevant times employer, ARCIERO BROTHERS, INC., a

28   California corporation, also known as ARCIERO BROS., INC. and DOES 1

1  through 5, ("EMPLOYER") is a California corporation and is a contractor engaged

2  in the construction industry within the jurisdiction of the relevant UNIONS.

3      13.    At all relevant times, PHILADELPHIA INDEMNITY INSURANCE

4  COMPANY, a Pennsylvania corporation, and DOES 6 through 10

5  ("PHILADELPHIA INDEMNITY") was, and now is, a Pennsylvania corporation

6  duly authorized under the laws of the State of California to transact a general

7  insurance and surety business in the State of California and is an admitted surety.

8                    **FIRST CLAIM FOR RELIEF**

9                **(DAMAGES FOR FAILURE TO PAY FRINGE**

10        **BENEFIT CONTRIBUTIONS AGAINST ARCIERO BROTHERS,**

11      **INC., a California corporation, also known as ARCIERO BROS., INC.;**

12                **and DOES 1 THROUGH 5; ("EMPLOYER"))**

13      14.    On or about the date set forth thereon, EMPLOYER made, executed

14  and delivered to the UNION, Carpenters Memorandum Agreement dated January 9,

15  1996 ("MEMORANDUM AGREEMENT").  A true and correct copy is attached

16  hereto, marked respectively as Exhibit "1" and incorporated herein by reference.

17      15.    On or about the date set forth thereon, EMPLOYER made, executed

18  and delivered to the UNION, 2004 Southern California Carpenters Tilt-Up

19  Construction Labor Agreement dated June 9, 2004 ("TILT-UP AGREEMENT").  A

20  true and correct copy is attached hereto, marked respectively as Exhibit "2" and

21  incorporated herein by reference.

22      16.    The MEMORANDUM AGREEMENT and the TILT-UP

23  AGREEMENT binds EMPLOYER to the terms and conditions of the Master Labor

24  Agreement between the United General Contractors and the United Brotherhood of

25  Carpenters and Joiners of America and the Southern California Conference of

26  Carpenters, and the UNIONS, dated July 1, 1992, and any renewals or subsequent

27  Master Labor Agreements, and the PLANS' agreements and any amendments,

28  modifications, extensions, supplementations or renewals of the PLANS' agreements

1 (collectively referred to as "AGREEMENTS"). The PLANS are third party

2 beneficiaries of the MEMORANDUM AGREEMENT, TILT-UP AGREEMENT

3 and Master Labor Agreements.

4     17.    The AGREEMENTS require EMPLOYER to pay fringe benefit

5 contributions at the rates set forth therein for every hour worked by employees

6 performing services covered by the AGREEMENTS, and on account of all

7 compensation paid to employees performing services covered by the

8 AGREEMENTS.

9     18.    The AGREEMENTS require EMPLOYER to make the fringe benefit

10 contributions by way of Employers Monthly Reports ("REPORTS") to the PLANS

11 at their place of business in Los Angeles, California, on or before the 25th day of

12 each month following the month during which the hours for which contributions are

13 due were worked or paid. Further, the AGREEMENTS specifically provide that the

14 venue of an action to recover delinquent fringe benefit contributions shall be in the

15 County of Los Angeles.

16     19.    In acknowledging both that the regular and prompt payment of

17 employer contributions is essential to the maintenance of the PLANS, and the

18 extreme difficulty, if not impracticability, of fixing the actual expense and damage

19 to the PLANS when such monthly contributions are not paid when due, the

20 AGREEMENTS provide that the amount of contractual damages to the PLANS

21 resulting from a failure to pay contributions when due shall be presumed to be the

22 sum of $30.00 per delinquency or 10 percent of the amount of the contributions due,

23 whichever is greater. This amount shall become due and payable to the CSAC as

24 liquidated damages in addition to the unpaid contributions or contributions paid

25 late.

26     20.    EMPLOYER engaged workers who performed services covered by the

27 AGREEMENTS and who performed labor on works of construction within the

28 jurisdiction of the AGREEMENTS undertaken by EMPLOYER during the term of

1  the AGREEMENTS.

2      21.    EMPLOYER has failed to pay the fringe benefit contributions in the

3  manner prescribed by the AGREEMENTS, and there is now due and owing to the

4  PLANS from EMPLOYER the amounts set forth in Exhibit "3".

5      22.    The AGREEMENTS require EMPLOYER to pay for the expense of

6  auditing EMPLOYER business records if an audit by the PLANS indicates that

7  EMPLOYER failed to report and pay all contributions.

8      23.    As a result of the failure to pay fringe benefit contributions in the

9  manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the

10 unpaid contributions from the first of the month following the date due, at the rate

11 prescribed by the AGREEMENTS.

12     24.    As a result of the failure to pay fringe benefit contributions in the

13 manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount

14 equal to the greater of interest on the unpaid contributions as prescribed by section

15 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated

16 damages provided for under the AGREEMENTS.

17     25.    It has been necessary for PLAINTIFFS to engage counsel to bring this

18 action to recover the delinquent fringe benefit contributions.  Pursuant to the

19 AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2),

20 EMPLOYER is liable for reasonable attorneys' fees incurred in litigating this

21 matter.

22     26.    The PLANS have complied with all conditions precedent.

23     27.    CSAC has, concurrently with the filing of this complaint, served a copy

24 of same upon the Secretary of Labor and Secretary of the Treasury.

25 ///

26 ///

27 ///

28 ///

6

## SECOND CLAIM FOR RELIEF

### (DAMAGES FOR FAILURE TO PAY CONTRACTOR'S

### LICENSE BOND AGAINST PHILADELPHIA INDEMNITY

### INSURANCE COMPANY, a Pennsylvania corporation;

### and DOES 6 THROUGH 10 ("PHILADELPHIA INDEMNITY")

28.   PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 27 of its First Claim for Relief and allege for a Second Claim for Relief against PHILADELPHIA INDEMNITY, for failure to pay contractor's license bond.

29.   At all times herein mentioned, PHILADELPHIA INDEMNITY was, and now is, a Pennsylvania corporation duly authorized under the laws of the State of California to transact a general insurance and surety business in the State of California and is an admitted surety.

30.   On or about April 10, 2013, PHILADELPHIA INDEMNITY issued to EMPLOYER, contractor's license bond, Bond Number PB03010400632 in the penal sums of $12,500.00.

31.   The bond was issued, inter alia, for the benefit of an express trust fund established pursuant to a collective bargaining agreement to which an employer is obligated to make fringe benefit payments.

32.   The PLANS were, and are now, express trust funds within the meaning of the Contractors' License Law of the State of California.

33.   Because EMPLOYER has breached its primary obligation by failing to pay fringe benefit contributions, PHILADELPHIA INDEMNITY is liable for that obligation to the maximum allowable by law.

34.   Despite a claim for payment by PLAINTIFFS, PHILADELPHIA INDEMNITY has failed to pay.

///

///

7

1    WHEREFORE, PLAINTIFFS pray for judgment as follows:

2    **FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF**

3    **(DAMAGES FOR FAILURE TO PAY FRINGE**

4    **BENEFIT CONTRIBUTIONS AGAINST EMPLOYER)**

5    1.    For unpaid contributions in the sum of $400,827.23;

6    2.    For interest and liquidated damages, as provided in the AGREEMENTS;

7    3.    For audit costs;

8    4.    For a statutory amount equal to the greater of the interest on unpaid

9    contributions which were owing as of the time of the filing of the complaint herein

10   (at the rate prescribed by law), or liquidated damages as provided in the

11   AGREEMENTS, in an amount to be determined.

12   **FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF**

13   **(DAMAGES FOR FAILURE TO PAY CONTRACTOR'S LICENSE**

14   **BOND AGAINST AMERICAN CONTRACTORS)**

15   1.  For unpaid contributions in the sum of $12,500.00 or the maximum

16   allowed on the bonds, whichever is greater;

17   2.  For interest on the unpaid contributions at the rate prescribed by law.

18   **AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF:**

19   1.    For reasonable attorneys' fees;

20   2.    For costs of this action;

21   3.    For further contributions according to proof; and

22   4.    For such other and further relief as the court deems proper.

23

24   Dated: January 7, 2014                    DeCARLO & SHANLEY,
                                               a Professional Corporation
25

26

27   By: _____
                                               JODI SIEGNER
28                                             Attorneys for Plaintiffs

## CARPENTERS MEMORANDUM AGREEMENT

### 1995-1998

It is agreed between the undersigned, hereinafter called "Contractor", and the District Councils and Local Unions affiliated with the Southern California Conference of Carpenters and United Brotherhood of Carpenters and Joiners of America in the 12 Southern California Counties; namely, Los Angeles, Orange, San Bernardino, Riverside, Imperial, Ventura, Santa Barbara, San Luis Obispo, Kern, Inyo, Mono, and San Diego, hereinafter called the "Carpenters' Unions", in consideration of services performed and to be performed by Carpenters for the Contractor, as follows:

1.     The Contractor agrees to comply with all the terms, including wages, hours, and working conditions and rules as set forth in the Agreement referred to as the Master Labor Agreement between United General Contractors, Inc. hereinafter called the "Association" and the United Brotherhood of Carpenters and Joiners of America and the Southern California Conference of Carpenters, dated July 1, 1992, and any renewals or subsequent Master Labor Agreements, and the Agreements establishing: (1) The Carpenters Health & Welfare Trust for Southern California, dated February 8, 1955; (2) The Carpenters Pension Trust for Southern California, dated September 14, 1959; (3) The Carpenters Joint Apprenticeship and Training Committee Fund for Southern California, dated May 1, 1960; (4) the 11 County Carpenters Vacation Savings and Holiday Plan, dated April 1, 1962; (5) the Contract Administration Trust Fund for Carpenters-Management Relations, dated October 1, 1986; (6) The Construction Industry Cooperation Committee, dated October 1, 1986; (7) The Acoustical Industry Advancement Fund; and (8) the Carpenters Industry Advancement Fund of Southern California, dated September 19, 1972; and any amendments, modifications, extensions, supplementations and renewals of such Agreements and the Trust Agreements and any agreements establishing other benefits or plans negotiated by the Carpenters' Unions and the Contractor Association signatory to such Master Labor Agreement.

Except as specifically excluded by this Memorandum Agreement, such Master Labor Agreement and Trust Agreements are specifically incorporated by reference and made a part of this Memorandum Agreement.

2.     The Contractor agrees to pay the Carpenters Health & Welfare Trust for Southern California, the Carpenters Pension Trust for Southern California, the 11 County Carpenters Vacation Savings and Holiday Plan the Carpenters Joint Apprenticeship and Training Committee Fund for Southern California, the Contract Administration Trust Fund for Carpenters-Management Relations, the Carpenters-Contractors Cooperation Committee, the Acoustical Industry Advancement Fund and the Carpenters Industry Advancement Fund of Southern California the sums in the amounts and manner provided for in the Master Labor Agreement and further agrees to be bound by the Trust Agreements. By-Laws and Rules and Procedures adopted by the Trustees and Directors of the Trust Funds and Committee referred to herein, and all amendments, modifications, extensions and renewals thereto.

3.     The Contractor agrees that he does irrevocably designate and appoint the Employers mentioned in the Agreements establishing the Carpenters Health and Welfare Trust for Southern California, the Carpenters Pension Trust for Southern California, the 11 County Carpenters Vacation Savings and Holiday Plan, the Carpenters Joint Apprenticeship and Training Committee Fund for Southern California, the Contract Administration Trust Fund for Carpenters-Management Relations, the Carpenters-Contractors Cooperation Committee and the Acoustical Industry Advancement Fund along

1

EXHIBIT NO. 1
PAGE NO. 9

with representatives designated by the Residential Contractors Association and representatives of the United General Contractors, Inc., as his attorney-in-fact, for the selection, removal and substitution of Trustees or Directors as provided by or pursuant to the Master Labor Agreement and Trust Agreements and By-Laws.

4.      The parties agree that all provisions in the Master Labor Agreement covering or relating to the subjects of strikes, lockouts and the Procedure for Settlement of Grievances and Disputes (Articles IV and VI of the Master Labor Agreement), the provisions of paragraphs 114 and 115, and the provisions relating to Existing and other Agreements (Article XII of the Master Labor Agreement) shall be excluded from this Memorandum Agreement and shall not be binding upon the Contractor or the Carpenters' Unions.

5.      There has been established under this Agreement, an Independent Contractors Grievance and Arbitration Trust:

(a)      The purposes of the Trust are to establish and administer procedures to process grievances and to provide third party independent arbitration on disputes concerning the interpretation or application of this Agreement and the Master Labor Agreement that may occur between the Contractor and the Carpenters' Unions.

(b)      The Trustee is authorized to retain professional assistance, such as an administrator, legal counsel, accountants and such other personnel in order to accomplish such objectives of the Trust. Specifically, there shall be established through the Trust, a panel of independent and neutral arbitrators t hear and determine such grievances and disputes, with authority to issue a final and binding award, including appropriate remedies.

(c)      The Carpenters' Unions shall appoint an Advisory Committee regarding the appointment of the Trustee and the operation of the Trust; however, the Carpenters' Unions rights and authority shall be limited to consultation and advice only.

(d)      The Contractor and the Carpenters' Unions agree to submit all disputes, including jurisdictional disputes, concerning the interpretation or application of this Agreement and the Master Labor Agreement to arbitration under this Section 5, and the Contractor and the Carpenters' Unions agree that during the pendency of the grievance and arbitration procedure, the Carpenters' Unions will not strike or withdraw services or picket or engage in other economic action and the Contractor will not engage in a lockout; provided, however, the Carpenters' Unions shall have the right to engage in a strike, withdrawal of services or picketing and the Contractor may engage in a lockout on a claimed violation of this Agreement to the Master Labor Agreement on payment of wages, fringe benefits or contributions to any Trust referred to in this Agreement or failure to comply with a final and binding arbitration award, except as to any provision or arbitration award on subcontracting, including all subcontracting provisions of the Master Labor Agreement.

(e)      The Contractor agrees to contribute the sum of three ($0.03) cents per hour for each hour worked or paid for by employees performing work covered by this Agreement to the Independent Contractors Grievance and Arbitration Trust for the purposes of defraying costs and administering the Trust. The Contractor agrees to be bound to the Agreement and Declaration of Trust, dated September 1, 1980 and its amendments and modifications.

6.      The Contractor agrees that in the event the Contractor contacts or subcontracts any carpenter's work, and in the event that such subcontractor fails to pay the wages or the fringe benefits provided under the Agreements between the subcontractor and the Carpenters' Unions, then the

2

EXHIBIT NO. _____ 1
PAGE NO. _____ 10

Contractor shall become personally liable for the payment of such sums incurred by the subcontractor, and such sums shall immediately become due and payable by the Contractor, in the event that the contractor elects to subcontract work covered by this Agreement, the Contractor agrees to make the fringe benefit payments required by this Agreement. Such payments shall be measured by the hours worked or paid for by the employees of the subcontractor. The Trustees of the Trust Funds referred to in the Master Labor Agreement and this Memorandum Agreement are expressly made third party beneficiaries of the Contractors' promise to make such payments. The Trustees of the Trust Fund referred to in the Master Labor Agreement and this Memorandum Agreement, shall have the right to require any Contractor that is a party to this memorandum Agreement, to post a cash or surety bond in an amount sufficient to safeguard the payment of Trust Fund Contributions that are required to be paid to the Trust Funds in accordance with the Master Labor Agreement.

7.      For the purpose of protecting, improving and advancing the interests and welfare of the acoustical industry, its individual contractors and employees, Contractors agree to contribute the sum of twenty cents ($0.20) per hour for each hour worked or paid for by employees performing work covered by this Agreement on Acoustical Installation of the Acoustical Industry Advancement Fund, a Taft-Hartley Trust Fund which is jointly administered and created for this purpose. The Contractor adopts and agrees to be bound by the terms of the Trust Agreement establishing the Acoustical Industry Advancement Fund, and further agrees to observe and be bound by the actions and determination of the Board of Trustees of said Trust.

8.      Except as specifically excluded by this Memorandum Agreement, the Carpenters' Unions and the Contractor agree to abide by all the terms and conditions of the Master Labor Agreement and Trust Agreements and any amendments, modifications, changes, extensions, supplementations and renewals, including changes in wages, benefits, term, coverage, geographic scope or any other changes to such agreements.

9.      Preservation of Unit Work:

(a)      In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

(b)      All charges of violations of Subsection (a) of this paragraph, shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in paragraph t of this Agreement. As a remedy for violations of this paragraph the arbitrator (or arbitration body) provided in paragraph t is empowered at the request of the Carpenters' Union, to require an employer to (1) pay to affected employees covered by this

3

EXHIBIT NO. 1
PAGE NO. 11

Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations. Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Carpenters' Unions for violations of this paragraph; nor does it make the same of other remedies unavailable to the Carpenters' Unions for violation of this paragraph; not does it make the same or other remedies unavailable to this Carpenters' Unions for violations of other paragraphs of this Agreement.

(c)     If, as a result of violations of this paragraph, it is necessary for the Carpenters' Unions and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (b) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Carpenters' Unions and/or fund trustees, plus cost of the litigation, which have resulted from the bring of such court action.

(d)     If this paragraph 10 is declared to be unlawful, the parties will negotiate similar language that will give the Carpenters' Unions equivalent protection.

10.     The Contractor and the Carpenters' Unions expressly acknowledge that on all current jobsite work being performed by the Contractor, that a majority of Carpenters are employees represented by the Carpenters' Unions and that on all future jobsite work, the Contractor will employ carpenters under the Carpenters' Unions hiring hall provisions as expressly set forth in the Master Labor Agreement and that the parties intend to and are establishing a collective bargaining relationship by this Agreement and the Master Labor Agreement under Section 9 of the National Labor Relations Act of 1947, as amended.

11.     Each individual Employer signatory hereto specifically waives any right that he or it may have to terminate, abrogate, repudiate or cancel this Agreement during its term or during the term of any future modifications, changes, amendments, supplements, extensions, or renewals of or to said Master labor Agreement, or to file any petition before the National Labor Relations Board seeking to accomplish such termination, abrogation, cancellation or repudiation or to file a petition seeking clarification or redefinition of the bargaining unit covered by this Agreement.

12.     Notwithstanding any provision of the Master Labor Agreement or this Agreement, the individual employer agrees that upon a showing by the Union or any of its affiliates a majority of the individual employer's shop employees, if any, have designated the Union and/or any of its affiliates as their representative for collective bargaining purposes, the individual employer shall recognize the Union and/or its affiliates as the collective bargaining representative of its shop employees and shall forthwith comply with all wages, hours, terms and conditions of the then applicable Agreement for the term thereof. Proof of such majority representation shall be established by the submission of authorization cards to a neutral third person who shall compare the signatures with appropriate employer records. The individual employer shall fully cooperate in such review upon demand by the Union or any of its affiliates.

13.     This Memorandum Agreement shall remain in full force and effect for the period of the term of the Master Labor Agreement between the United General Contractors and the Southern California Conference of Carpenters, effective July 1, 1992 to June 30, 1998 and for the term of a successor Master labor Agreement and does hereby authorize the Association to represent the Contractor, unless either party shall give written notice by registered or certified mail to the other of desire to change or cancel this Memorandum Agreement at least sixty (60) days, but no earlier than ninety (90) days prior to June 30, 1998, or if such notice is not given, than at least sixty (60) days, but no earlier than ninety (90) days prior to the termination date of a successor Master Labor Agreement. All notices given by the Carpenters' Unions to the signatory Contractor Associations

EXHIBIT NO. _____1_____

PAGE NO. _____12_____

to the Master Labor Agreement shall constitute sufficient notice to the Contractor by the Carpenters' Unions; provided, however, that a notice to the Contractor Associations by either party shall not constitute sufficient notice of such intent not to be bound by a new Agreement or renewal or extension of the Master Labor Agreement and Trust Agreements.

Signed this _9_ day of _JANUARY_, 1996.

**THE DISTRICT COUNCILS AND LOCAL UNIONS IN THE 12 SOUTHERN CALIFORNIA COUNTIES**
**BILL PERRY, Secretary**
**SOUTHERN CALIFORNIA CONFERENCE OF CARPENTERS**

BY: _Alfred L Encinas_
Signature of Authorized Union Representative

_Alfred L. Encinas_
(Print Name)

LOCAL UNION NO.: _209_

_ARCIERO BROS INC_                          _167269_
Contractor or Firm Name (Print Exactly as Listed with State License Board)   State License No.

BY: _____                         _____
(Signature of Contractor)                    Driver's License Number

TITLE: _Pres._

_Philip ARCIERO_                             _____
(Print name and title of person signing this Agreement)   Social Security Number

_1261 Pa Simpson CIRCLE_
Address

_ANAHEIM CA. 92806_
City, State, Zip

_714 517.9191_                              _714.517.9181_
Phone Number                                 Fax Number

_60_
Approximate Number of Employees

Agreement\MemoAgr.95



JUN-16-2004 WED 02:06 PM CAR    TERS LOCAL 803          FAX NO. 714    9826          P. 04

## 2004 SOUTHERN CALIFORNIA CARPENTERS
## TILT-UP CONSTRUCTION LABOR AGREEMENT

1.   **Coverage.**   This Agreement shall apply to new, private tilt up construction, and misc. concrete work performed in connection with a tilt up construction project, on any project with a project cost, excluding land, of up to nine million dollars ($9,000,000.00).  Non-tilt up projects will not be covered by this Agreement, except as provided below.  Tilt up projects more than nine million dollars ($9,000,000.00) will be covered by the Building Industry Association of Southern California Master Labor Agreement.  This Agreement will cover all employees performing carpenter craft work and any other classification of workers which the Contractor wishes to cover, with the agreement, in writing, of the Union.  Work on other types of concrete construction will be handled as follows:

   (a)   Any type of construction work performed on a public works project, or on a trust funded project, will be covered by the BIA Master Labor Agreement, which is incorporated herein, and performed under the appropriate established prevailing wage and benefit package.

2.   **Trust Funds.**   The Contractor agrees to comply with all the terms of the Agreements establishing: (1) The Carpenters Health & Welfare Trust for Southern California, dated February 8, 1955; (2) The Carpenters Pension Trust for Southern California, dated September 14, 1959; (3) The Carpenters Joint Apprenticeship and Training Committee Fund for Southern California, dated May 1, 1960; and  (4) the 12 County Carpenters Vacation Savings and Holiday Plan, dated April 1, 1962; and any amendments, modifications, extensions, supplementations and renewals of such Trust Agreements.  Such Trust Agreements are specifically incorporated by reference and made a part of this Agreement.  The Contractor agrees to pay the aforementioned Trust Funds the sums in the manner and amount set forth in said Trust Agreements and to abide by the Rules and Procedures adopted by the Trustees of the Trust Funds referred to herein, and all amendments, modifications, extensions and renewals thereto.  The Contractor agrees that he does irrevocably designate and appoint the Employers mentioned in the Agreements establishing the aforementioned Trust along with representatives designated by the United General Contractors, Inc., as his attorney-in-fact, for the selection, removal and substitution of Trustees or Directors as provided by or pursuant to the Master Labor Agreement and Trust Agreements and By-Laws.

3.   **Recognition.**   The Contractor hereby recognizes the Union as the sole and exclusive collective bargaining representative of all employees and persons employed to perform work covered by this Agreement, including Craft Foreman, pursuant to 9(a) of the National Labor Relations Act.  The Contractor acknowledges that the Union has offered to show documentation establishing that it represents a majority of the Contractor's employees.

4.   **Hiring.**   On tilt up construction projects employees may solicit their own work directly with the Contractor.  Within 48 hours of being hired an employee must obtain a work referral from the appropriate union hiring hall.  The Union will maintain open and nondiscriminatory hiring lists which may be used by the Contractor.

EXHIBIT NO. ___2___

PAGE NO. ___14___

JUN-10-2004 WED 02:05 PM CARP...TERS LOCAL 803          FAX NO. 714...9020          P. 05

Employees employed by one (1) or more of the Contractors for a period of eight (8) days continuously or accumulatively will be or become after the eight (8) day period, or eight (8) days after the effective date of this Agreement, whichever is later, members of the Union and will remain members of the Union as a condition of continued employment. The Contractor will discharge any employee pursuant to this section upon written notice from the Union of such employee's nonpayment of initiation fees or dues. Such written notice will indicate the amount of initiation fees or dues which are in a state of delinquency and will give the employee forty-eight (48) hours within which to cure the delinquency. The Contractor agrees to furnish a copy of such notice to the employee forthwith.

5.     Subject to the foregoing, Contractors shall have complete freedom of selectivity in hiring. The individual Contractor is the judge as to the competence of all his employees and applicants for employment. All employees must perform their work to the satisfaction of the Contractor. Any discharge may be subject to the grievance procedure. The first five (5) days of employment of any employee will be a probationary period during which time any terminations will not be challenged, excluding union activities.

6.     **Journeyman Wages.**     Effective July 1, 2004, the wage rate for journeyman carpenters working on new tilt up concrete construction will be $21.50 per hour and they will be Benefit Code 2.

7.     **Apprentice Wages.**     Carpenter Apprentices performing work on new tilt-up concrete construction will be paid the following percentage of journeyman scale:

| PERIOD | PERCENTAGE | HOURS | WAGE | BENEFIT CODE |
|---|---|---|---|---|
| Pre-Apprentice | 40% | 500 | 8.60 | 0 |
| 1st Period | 50% | 600 | 10.75 | 0 |
| 2nd Period | 55% | 600 | 11.83 | 1 |
| 3rd Period | 60% | 600 | 12.90 | 1 |
| 4th Period | 65% | 600 | 13.98 | 2 |
| 5th Period | 70% | 600 | 15.05 | 2 |
| 6th Period | 75% | 600 | 16.13 | 2 |
| 7th Period | 80% | 600 | 17.20 | 2 |
| 8th Period | 90% | 600 | 19.35 | 2 |
| Journeyman | 100% | | 21.50 | 2 |
| Specialty Helper | | | 10.00 | 2 |

EXHIBIT NO. _2_
PAGE NO. _15_

**BENEFIT SCHEDULE Effective July 1, 2004**

| | |
|---|---|
| Pension | $1.11 |
| Health & Welfare | 3.95 |
| Apprenticeship | 0.34 |
| Vacation/Supplemental Dues | 1.80 |
| **Total** | **$7.20** |

**BENEFIT CODES (and total contribution as of 7/1/04)**

Code (0)   Vacation/Supplemental Dues ($0.80)

Code (1)   Health & Welfare ($3.95), Apprenticeship ($0.34), Vacation/Supp. Dues ($1.80)

Code (2)   Pension ($1.11), Health & Welfare ($3.95), Apprenticeship ($0.34), Vacation/Supplemental Dues ($1.80)

8.   **Fringe Benefit Cap.**   Fringe benefit contributions will be capped at 35 hours up to 50 hours in any work week. Employees will earn benefit hours on all hours worked up to 35 or over fifty in any one work week.

9.   **Carpenter Specialty Helper.**   There is created under this Appendix a new classification known as "carpenter specialty helpers". For each journeyman carpenter employed on a particular project, the contractor may employ two carpenter specialty helpers at a negotiated wage rate of not less than $10.00 per hour. The contractor and the carpenter's helper must agree on the appropriate wage rate and the employee must then receive a work referral from the Union setting forth that wage rate. This work referral must be obtained within 48 hours of going to work for the contractor. If the employee does not receive a referral setting forth his negotiated wage rate, then it will be presumed that the employee is paid $21.50 per hour. No more than two carpenter specialty helpers per journeyman may be employed on the jobsite at any time. There must be a minimum of one journeyman on the jobsite at all times before any carpenter specialty helpers may be employed.

10.   **Apprentice Ratio.**   In addition to carpenter specialty helpers, the contractor may employ one carpenter apprentice for each journeyman carpenter employed on the jobsite.

11.   **Grievance and Arbitration.**   Same procedure as contained in the Master Labor Agreement.

12.   **Supplemental Dues.**   Subject to the following conditions, the Contractor agrees that he shall, if he is furnished with his employee's written authorization to do so, deduct the sum of seventy-two cents ($0.80) per hour or the amount of Supplemental Dues that are lawfully required by the Union from the amounts

JUN-10-2004 WED 02:06 PM CAR¨TERS LOCAL 803        FAX NO. 1140¨¨8020            1. 01

required to be paid to the Carpenters Vacation Trust for each employee covered hereby for each hour worked or paid for in each payroll period as Special Supplemental Dues. In implementing the foregoing the Carpenters Southern California Administrative Corporation has been designated as Agent for the purpose of receiving and holding written authorization cards and for receiving, holding and allocating and distributing the dues monies. Said Supplemental Dues shall be transmitted to said Agent concurrently with, but not as a part of, the Employer's monthly vacation contributions with respect to his employees covered by this Agreement to the 12 County Carpenters Vacation Savings and Holiday Plan (Vacation Trust). The Union shall bear the entire responsibility for furnishing the written authorization referred to above. This provision shall not reduce the obligations of the Contractor to pay the full amount of vacation contributions specified in this Agreement. All written authorizations referred to above shall be irrevocable for a period of one (1) year from the date of the execution and shall renew automatically from year to year thereafter, unless the employee, by written notice served upon the Local Union and/or the Agent not more than twenty (20) days and not less than ten (10) days prior to the expiration of the first year or any year thereafter, shall have revoked such authorization.

### 13.   General Conditions.

**Work Assignments.**      When making work assignments, the Contractor shall recognize the established jurisdiction of the Union.

**Craft Steward and Business Representative.**      The Union business agent or special representative will have access to the project during working hours and will make every reasonable effort to advise the Contractor or his representative of his presence on the project. The craft job steward, if any, will be a working employee appointed by the appropriate District Council who will, in addition to his regularly assigned work, be permitted to perform during working hours, such of his steward's duties as cannot be performed otherwise.

**Holidays.**    The following holidays will be observed on the date designated by Federal Law:

1. New Year's Day
2. Memorial Day
3. Independence Day
4. Labor Day
5. Veteran's Day
6. Thanksgiving Day
7. Day after Thanksgiving Day
8. Christmas Day

If any of the above holidays should fall on Sunday, the Monday following will be considered a legal holiday. Work on such days will be paid for at double time.

**Overtime.**    All work on Sundays and holidays will be paid at double the employees regular rate. All work in excess of forty hours in one week, or eight hours in one day, or on Saturdays will be paid at time and one half the regular rate.

**Payment of Wages.**      All wages will be paid on a designated weekly payday and in no event will the Contractor withhold more than five (5) working days. If the regular payday falls on a holiday, the employees will be paid on the next regular workday. Employees will be paid prior to the ending of their regular shift. When men

EXHIBIT NO. 2
PAGE NO. 17

are laid off or discharged, they must be paid wages due them at the time of layoff or discharge.   An employee who quits will be mailed his pay in full by certified mail to his last known address within seventy-two (72) hours, or be paid prior to leaving the job or project.

**Subcontracting.**    The Contractor agrees that in the event he subcontracts either concrete or roof structure work on a project covered by this Agreement, such work will only be subcontracted to a another contractor signed to this or another appropriate agreement with the Southern California Conference of Carpenters.

**Successor.**  This Agreement shall be binding upon the Contractor regardless of change of name or business entity, and shall apply to covered work performed by any business entity wherein the Contractor exercises, either directly or indirectly (such as through family members), any significant degree of ownership, management or control, (provided such ownership, management or control is legally sufficient under applicable law).

**Job Registration.**  The Contractor must register all jobs or projects with the Carpenters Trust Field Office  prior to the start of the project.  Registration forms are to be supplied by the Union.

**Labor Management Committee.** A committee of equal numbers of labor and management representatives shall be formed to meet on a periodic basis and review issues of concern regarding the tilt up industry.

**Favored Nations.**        If the Union enters into an agreement applicable to the work covered by this Agreement which contains provisions more favorable to the Contractor than those contained herein, any Contractor signatory to this Agreement may utilize the more favorable agreement, in its entirety.  Term of Agreement shall not be considered a more favorable provision.

14.   **Term.**        This Agreement shall remain in full force from the date signed to June 30, 2005, and from year to year thereafter, unless either party shall give written notice by registered or certified mail to be received by the other party of its desire to change or cancel this Agreement at least sixty (60) days, but no earlier than ninety (90) days prior to July 1, 2004, or if such notice is not given, than at least sixty (60) days, but no earlier than ninety (90) days prior to July 1 of any subsequent year.  In the absence of notice as provided above this Agreement shall continue in effect from year to year and shall incorporate any changes in this Agreement agreed to by the Southern California Tilt Up Contractors Association.

EXHIBIT NO. _____ 2 _____

PAGE NO. _____ 18 _____

JUN-10-2004 WED 02:01 PM CAR   IERS LOCAL 803          FAX NO. 1149    8020          P. 08

DATED:___JUNE 09, 2004_____

**CONTRACTOR**

ARCIERO BROS., INC.                    167269
Name of Company and License Number (as listed with State License Board)

_____     PHIL ARCIERO, JR. - PRESIDENT
Signature of Officer         Print Name and Title

950 N. TUSTIN AVE.     ANAHEIM     CA     92807
Address                City        State   Zip

(714) 238-6600     (714) 238-6611
Telephone Number     Fax Number          E Mail Address

SOUTHERN CALIFORNIA CONFERENCE OF CARPENTERS

By:_____  LOCAL 803

EXHIBIT NO._____2
PAGE NO._____19

**ARCIERO BROS INC**
**License #167269 (as of 12/26/2013)**

### CONTRIBUTIONS

| Delinquencies | | REF # | H&W | PEN | VAC | DUES | APP | IND | CACM | CCCC | CCWC | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/11 APP | Bad check | 7665 | | | | | | $19.64 | $19.64 | $58.91 | $8.42 | $106.61 |
| 3/11 REG | Bad check | 7667 | $2,431.99 | $2,099.03 | | | $(124.42) | $541.80 | $541.80 | $1,625.40 | $232.20 | $7,347.80 |
| 3/11 REG | Bad check | 7669 | $63.20 | | | | $6.72 | $1.12 | $1.12 | $3.36 | $0.48 | $76.00 |
| 4/11 APP | No dollars | 9454 | $768.28 | | | | $81.69 | $13.62 | $13.62 | $40.85 | $5.84 | $923.90 |
| 4/11 REG | No dollars | 9413 | $33,561.18 | $28,973.07 | | | $3,568.53 | $594.76 | $594.76 | $1,784.27 | $254.90 | $69,331.47 |
| 5/11 APP | No dollars | 9456 | $414.75 | | | | $44.10 | $7.35 | $7.35 | $22.05 | $3.15 | $498.75 |
| 5/11 REG | No dollars | 9415 | $28,299.78 | $24,430.95 | | | $3,009.09 | $501.52 | $501.52 | $1,504.55 | $214.94 | $58,462.35 |
| 6/11 APP | No dollars | 35 | $537.20 | | | | $57.12 | $9.52 | $9.52 | $28.56 | $4.08 | $646.00 |
| 6/11 REG | No dollars | 37 | $26,577.58 | $22,944.19 | | | $2,825.97 | $471.00 | $471.00 | $1,412.99 | $201.86 | $54,904.59 |
| 7/11 APP | No dollars | 1765 | $789.60 | | | | $70.56 | $11.76 | $11.76 | $35.28 | $5.04 | $924.00 |
| 7/11 REG | No dollars | 1767 | $31,927.10 | $23,164.13 | | | $2,853.06 | $475.51 | $475.51 | $1,426.53 | $203.79 | $60,525.63 |
| 8/11 APP | No dollars | 2764 | $620.40 | | | | $55.44 | $9.24 | $9.24 | $27.72 | $3.96 | $726.00 |
| 8/11 REG | No dollars | 2766 | $22,675.15 | $16,451.55 | | | $2,026.29 | $337.72 | $337.72 | $1,013.15 | $144.74 | $42,986.32 |
| 11/11 APP | Bad check | 6126 | $495.85 | | | | $44.31 | $7.39 | $7.39 | $22.16 | $3.17 | $580.27 |
| 11/11 REG | Bad check | 6128 | $1,165.58 | | | | $104.16 | $17.36 | $17.36 | $52.08 | $7.44 | $1,363.98 |
| 11/11 REG | Bad check | 6130 | $15,063.50 | $10,929.05 | | | $1,346.10 | $224.35 | $224.35 | $673.05 | $96.15 | $28,556.55 |
| 12/11 APP | No dollars | 7902 | $364.25 | | | | $32.54 | $5.43 | $5.43 | $16.28 | $2.33 | $426.26 |
| 12/11 REG | No dollars | 7904 | $17,131.50 | $12,429.45 | | | $1,530.92 | $255.15 | $255.15 | $765.45 | $109.35 | $32,476.95 |
| 12/11 REG | No dollars | 7906 | $620.40 | | | | $55.44 | $9.24 | $9.24 | $27.72 | $3.96 | $726.00 |
| 6/12 APP | No dollars | 4575 | $(0.01) | | | | | | | | | $(0.01) |
| 10/12 REG | No dollars | 9209 | $0.01 | | | | | | | | | $0.01 |
| 12/12 REG | No dollars | 1797 | $1,332.12 | $900.28 | | | $102.45 | $245.76 | $215.04 | $645.12 | | $3,440.77 |
| 2/13 APP | Overage/Shortage | 3657 | $(86.13) | | | | | | | | | $(86.13) |
| 4/13 REG | No dollars | 6202 | $(0.01) | | | | | | | | | $(0.01) |
| 5/13 REG | Overage/Shortage | 7127 | $(103.70) | | | | | | | | | $(103.70) |
| 7/13 REG | No dollars | 9948 | $5,820.98 | $3,993.31 | | | $429.22 | $173.28 | $151.62 | $454.86 | | $11,023.27 |
| 8/13 REG | No dollars | 1226 | $13,532.11 | $9,283.93 | | | $997.66 | $289.83 | $253.61 | $760.83 | | $25,117.97 |
| 9/13 REG | Overage/Shortage | 1990 | $(78.36) | | | | | | | | | $(78.36) |
| 10/13 APP | Overage/Shortage | 3095 | $(76.01) | | | | | | | | | $(76.01) |
| **TOTAL C's** | | | **$203,848.29** | **$155,598.94** | | | **$19,116.93** | **$4,222.35** | **$4,133.75** | **$12,401.17** | **$1,505.80** | **$400,827.23** |

### LIQUIDATED DAMAGES

| Delinquencies | | REF # | H&W | PEN | VAC | DUES | APP | IND | CACM | CCCC | CCWC | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/11 APP | No dollars LD | 6554 | $56.88 | | $14.68 | $18.43 | $6.04 | | | | | $96.03 |
| 1/11 REG | No dollars LD | 6556 | $2,244.98 | $1,938.07 | $1,148.06 | $727.48 | $238.70 | | | | | $6,297.29 |
| 3/11 APP | No dollars LD | 7666 | $110.79 | | $28.61 | $35.90 | $11.78 | | | | | $187.08 |
| 3/11 REG | No dollars LD | 7668 | $3,057.30 | $2,639.34 | $1,563.48 | $990.72 | $325.08 | | | | | $8,575.92 |

| Period | Description | Num | $ | $ | $ | $ | $ | $ |
|---|---|---|---|---|---|---|---|---|
| 3/11 REG | No dollars LD | 7670 | 6.32 | | 5.00 | 5.00 | 5.00 | 21.32 |
| 4/11 APP | No dollars LD | 9455 | 76.82 | | 19.83 | 24.89 | 8.16 | 129.70 |
| 4/11 REG | No dollars LD | 9414 | 3,356.11 | 2,897.30 | 1,716.29 | 1,087.55 | 356.85 | 9,414.10 |
| 5/11 APP | No dollars LD | 9457 | 41.47 | | 10.71 | 13.44 | 5.00 | 70.62 |
| 5/11 REG | No dollars LD | 9416 | 2,829.97 | 2,443.09 | 1,447.22 | 917.05 | 300.90 | 7,938.23 |
| 6/11 APP | No dollars LD | 36 | 53.72 | | 13.87 | 17.40 | 5.71 | 90.70 |
| 6/11 REG | No dollars LD | 38 | 2,657.75 | 2,294.41 | 1,359.15 | 861.24 | 282.59 | 7,455.14 |
| 7/11 APP | No dollars LD | 1766 | 78.96 | | 17.13 | 21.50 | 7.05 | 124.64 |
| 7/11 REG | No dollars LD | 1768 | 3,177.67 | 2,305.50 | 1,365.72 | 865.40 | 283.96 | 7,998.25 |
| 8/11 APP | No dollars LD | 2765 | 62.04 | | 13.46 | 16.89 | 5.54 | 97.93 |
| 8/11 REG | No dollars LD | 2767 | 2,282.55 | 1,656.06 | 981.01 | 621.63 | 203.97 | 5,745.22 |
| 9/11 APP | No dollars LD | 3790 | 18.80 | | 5.00 | 5.12 | 5.00 | 33.92 |
| 9/11 REG | No dollars LD | 3792 | 2,401.93 | 1,742.68 | 1,032.32 | 654.14 | 214.64 | 6,045.71 |
| 9/11 REG | No dollars LD | 3794 | 53.58 | | 23.02 | 14.59 | 5.00 | 96.19 |
| 10/11 APP | Late report LD | 5492 | 26.32 | | 5.71 | 7.16 | 5.00 | 44.19 |
| 10/11 APP | Late report LD | 5493 | 900.16 | 653.10 | 386.88 | 245.15 | 80.44 | 2,265.73 |
| 10/11 REG | Late report LD | 5494 | 62.51 | | 26.86 | 17.02 | 5.58 | 111.97 |
| 11/11 APP | No dollars LD | 6127 | 49.58 | | 10.76 | 13.50 | 5.00 | 78.84 |
| 11/11 REG | No dollars LD | 6129 | 116.56 | | 50.09 | 31.74 | 10.41 | 208.80 |
| 11/11 REG | No dollars LD | 6131 | 1,506.35 | 1,092.90 | 647.41 | 410.24 | 134.61 | 3,791.51 |
| 12/11 APP | No dollars LD | 7903 | 36.42 | | 7.90 | 9.92 | 5.00 | 59.24 |
| 12/11 REG | No dollars LD | 7905 | 1,713.15 | 1,242.94 | 736.29 | 466.56 | 153.09 | 4,312.03 |
| 12/11 REG | No dollars LD | 7907 | 62.04 | | 26.66 | 16.89 | 5.54 | 111.13 |
| 1/12 APP | Late report LD | 8626 | 11.28 | | 5.00 | 5.00 | 5.00 | 26.28 |
| 1/12 REG | Late report LD | 8627 | 751.64 | 545.34 | 323.04 | 204.70 | 67.16 | 1,891.88 |
| 1/12 REG | Late report LD | 8628 | 33.84 | | 14.54 | 9.21 | 5.00 | 62.59 |
| 2/12 APP | No dollars LD | 9706 | 26.32 | | 5.71 | 7.16 | 5.00 | 44.19 |
| 2/12 REG | No dollars LD | 9708 | 1,546.30 | 1,121.89 | 664.58 | 421.12 | 138.18 | 3,892.07 |
| 2/12 REG | No dollars LD | 9710 | 41.36 | | 17.77 | 11.26 | 5.00 | 75.39 |
| 3/12 APP | No dollars LD | 304 | 46.29 | | 10.04 | 12.60 | 5.00 | 73.93 |
| 3/12 REG | No dollars LD | 306 | 2,607.32 | 1,891.69 | 1,120.59 | 710.08 | 232.99 | 6,562.67 |
| 3/12 REG | No dollars LD | 308 | 85.54 | | 36.76 | 23.29 | 7.64 | 153.23 |
| 4/12 APP | No dollars LD | 1472 | 53.58 | | 11.62 | 14.59 | 5.00 | 84.79 |
| 4/12 REG | No dollars LD | 1474 | 2,108.89 | 1,530.06 | 906.37 | 574.33 | 188.45 | 5,308.10 |
| 4/12 REG | No dollars LD | 1476 | 30.08 | | 12.92 | 8.19 | 5.00 | 56.19 |
| 5/12 APP | No dollars LD | 2375 | 25.85 | | 5.61 | 7.04 | 5.00 | 43.50 |
| 5/12 REG | No dollars LD | 2377 | 1,954.96 | 1,418.39 | 840.21 | 532.41 | 174.69 | 4,920.66 |
| 6/12 APP | No dollars LD | 4576 | 7.52 | | 5.00 | 5.00 | 5.00 | 22.52 |
| 6/12 REG | No dollars LD | 4578 | 2,354.23 | 1,708.06 | 1,011.81 | 641.15 | 210.37 | 5,925.62 |
| 7/12 APP | No dollars LD | 4905 | 13.08 | | 5.00 | 5.00 | 5.00 | 28.08 |
| 7/12 REG | No dollars LD | 4907 | 1,773.43 | 1,190.96 | 657.30 | 416.51 | 136.66 | 4,174.86 |
| 8/12 APP | No dollars LD | 6384 | 105.73 | | 19.78 | 24.83 | 8.14 | 158.48 |
| 8/12 REG | No dollars LD | 6386 | 2,305.89 | 1,548.54 | 854.66 | 541.56 | 177.70 | 5,428.35 |
| 10/12 REG | No dollars LD | 9210 | 2,140.76 | 1,437.64 | 793.45 | 502.78 | 164.97 | 5,039.60 |

| | | | H&W | PEN | VAC | DUES | APP | | Total |
|---|---|---|---|---|---|---|---|---|---|
| 11/12 REG | Late report LD | 1184 | $ 1,071.19 | $ 719.37 | $ 397.03 | $ 251.58 | $ 82.55 | | $ 2,521.72 |
| 12/12 REG | No dollars LD | 1798 | $ 1,674.24 | $ 1,124.35 | $ 620.54 | $ 393.21 | $ 129.02 | | $ 3,941.36 |
| 3/13 REG | No dollars LD | 4858 | $ 1,460.05 | $ 980.51 | $ 541.15 | $ 342.91 | $ 112.51 | | $ 3,437.13 |
| 4/13 REG | No dollars LD | 6203 | $ 1,127.06 | $ 756.88 | $ 417.73 | $ 264.70 | $ 86.85 | | $ 2,653.22 |
| 6/13 REG | Late report LD | 8302 | $ 1,187.55 | $ 797.51 | $ 440.15 | $ 278.91 | $ 91.51 | | $ 2,795.63 |
| 7/13 REG | No dollars LD | 9949 | $ 1,234.62 | $ 846.90 | $ 437.53 | $ 288.07 | $ 90.97 | | $ 2,898.09 |
| 8/13 REG | No dollars LD | 1227 | $ 2,085.11 | $ 1,416.59 | $ 731.84 | $ 481.85 | $ 152.16 | | $ 4,847.55 |
| 9/13 APP | Late report LD | 1989 | $ 82.08 | | $ 14.68 | $ 19.15 | $ 6.04 | | $ 121.95 |
| 9/13 REG | Late report LD | 1991 | $ 1,408.76 | $ 984.98 | $ 498.53 | $ 328.24 | $ 103.65 | | $ 3,302.16 |
| 10/13 APP | Late report LD | 3096 | $ 90.34 | | $ 16.16 | $ 21.08 | $ 6.65 | | $ 134.23 |
| 10/13 REG | Late report LD | 3097 | $ 1,354.32 | $ 929.01 | $ 479.95 | $ 316.00 | $ 99.79 | | $ 3,179.07 |
| TOTAL LDs | | | $ 57,817.94 | $ 41,834.06 | $ 24,580.17 | $ 15,780.06 | $ 5,194.29 | | $ 145,206.52 |

## AUDIT FEES, INTEREST and BANK CHARGES

| Delinquencies | | REF # | H&W | PEN | VAC | DUES | APP | IND | CACM | CCCC | CCWC | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/11 REG | Bank Charge | 1 | $ 10.00 | $ 10.00 | $ 5.00 | | | | | | | $ 25.00 |
| 11/11 REG | Bank Charge | 4 | $ 10.00 | $ 10.00 | $ 5.00 | | | | | | | $ 25.00 |
| 11/12 REG | Bank Charge | | $ 16.11 | $ 10.00 | $ 5.00 | | | | | | | $ 31.11 |
| TOTAL FEEs | | | $ 36.11 | $ 30.00 | $ 15.00 | | | | | | | $ 81.11 |

| Delinquencies | | REF # | H&W | PEN | VAC | DUES | APP | IND | CACM | CCCC | CCWC | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/11 | *** Interest | | $ 600.76 | $ 505.71 | $ 303.43 | $ 194.67 | $ 63.87 | | | | | $ 1,668.44 |
| 3/11 | *** Interest | | $ 5,029.00 | $ 4,201.58 | $ 1,083.70 | $ 1,319.85 | $ 510.32 | | | | | $ 12,144.45 |
| 4/11 | *** Interest | | $ 6,735.15 | $ 5,684.27 | $ 978.89 | $ 1,299.27 | $ 716.14 | | | | | $ 15,413.72 |
| 5/11 | *** Interest | | $ 5,451.82 | $ 4,638.53 | $ 729.76 | $ 1,027.87 | $ 579.78 | | | | | $ 12,427.76 |
| 6/11 | *** Interest | | $ 4,970.76 | $ 4,206.20 | $ 597.47 | $ 986.70 | $ 528.53 | | | | | $ 11,289.66 |
| 7/11 | *** Interest | | $ 5,781.35 | $ 4,093.28 | $ 512.66 | $ 1,084.78 | $ 516.63 | | | | | $ 11,988.70 |
| 8/11 | *** Interest | | $ 3,973.16 | $ 2,805.93 | $ 303.79 | $ 734.07 | $ 355.04 | | | | | $ 8,171.99 |
| 9/11 | *** Interest | | $ 677.14 | $ 476.92 | $ 290.07 | $ 184.41 | $ 61.03 | | | | | $ 1,689.57 |
| 10/11 | *** Interest | | $ 141.68 | $ 93.56 | $ 60.09 | $ 38.58 | $ 13.03 | | | | | $ 346.94 |
| 11/11 | *** Interest | | $ 2,500.24 | $ 1,631.93 | $ 496.29 | $ 431.08 | $ 223.50 | | | | | $ 5,283.04 |
| 12/11 | *** Interest | | $ 2,617.90 | $ 1,796.14 | $ 501.90 | $ 442.34 | $ 234.16 | | | | | $ 5,592.44 |
| 1/12 | *** Interest | | $ 100.23 | $ 68.60 | $ 43.09 | $ 27.54 | $ 9.70 | | | | | $ 249.16 |
| 2/12 | *** Interest | | $ 262.22 | $ 181.80 | $ 111.50 | $ 71.23 | $ 23.84 | | | | | $ 650.59 |
| 3/12 | *** Interest | | $ 571.43 | $ 393.62 | $ 242.91 | $ 155.22 | $ 51.03 | | | | | $ 1,414.21 |
| 4/12 | *** Interest | | $ 401.14 | $ 279.93 | $ 170.31 | $ 109.24 | $ 36.11 | | | | | $ 996.73 |
| 5/12 | *** Interest | | $ 396.59 | $ 283.98 | $ 169.35 | $ 108.00 | $ 35.71 | | | | | $ 993.63 |
| 6/12 | *** Interest | | $ 458.82 | $ 331.83 | $ 197.21 | $ 125.24 | $ 41.41 | | | | | $ 1,154.51 |
| 7/12 | *** Interest | | $ 230.23 | $ 153.48 | $ 85.25 | $ 54.24 | $ 18.10 | | | | | $ 541.30 |
| 8/12 | *** Interest | | $ 287.67 | $ 184.72 | $ 104.31 | $ 67.56 | $ 22.16 | | | | | $ 666.42 |
| 10/12 | *** Interest | | $ 332.90 | $ 223.56 | $ 58.80 | $ 37.26 | $ 25.65 | | | | | $ 678.17 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/12 | *** Interest | $ | 1,325.12 | $ | 889.90 | $ | 26.64 | $ | 16.88 | $ | 102.12 | $ | 2,360.66 |
| 12/12 | *** Interest | $ | 716.44 | $ | 483.30 | $ | 61.76 | $ | 39.51 | $ | 55.46 | $ | 1,356.47 |
| 3/13 | *** Interest | $ | 159.60 | $ | 107.18 | $ | 59.15 | $ | 37.48 | $ | 12.29 | $ | 375.70 |
| 4/13 | *** Interest | $ | 122.98 | $ | 82.59 | $ | 45.58 | $ | 28.88 | $ | 9.47 | $ | 289.50 |
| 6/13 | *** Interest | $ | 31.42 | $ | 21.10 | $ | 11.64 | $ | 7.38 | $ | 2.42 | $ | 73.96 |
| 7/13 | *** Interest | $ | 278.68 | $ | 191.16 | $ | 98.76 | $ | 65.02 | $ | 20.53 | $ | 654.15 |
| 8/13 | *** Interest | $ | 335.45 | $ | 230.10 | $ | 99.23 | $ | 77.32 | $ | 24.71 | $ | 766.81 |
| 9/13 | *** Interest | $ | 12.44 | $ | 8.51 | $ | 4.52 | $ | 3.06 | $ | 0.96 | $ | 29.49 |
| **TOTAL Interest** | | $ | 44,502.32 | $ | 34,249.41 | $ | 7,448.06 | $ | 8,774.68 | $ | 4,293.70 | $ | 99,268.17 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **GRAND TOTAL** | $ 306,204.66 | $ 231,712.41 | $ 32,043.23 | $ 24,554.74 | $ 28,604.92 | $ 4,222.35 | $ 4,133.75 | $ 12,401.17 | $ 1,505.80 | $ 645,383.03 |

EXHIBIT NO. 3
PAGE NO. 23

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____James V. Selna_____ and the assigned Magistrate Judge is _____Jean P. Rosenbluth_____ .

The case number on all documents filed with the Court should read as follows:

## 8:14CV30 JVS JPRx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____January 8, 2014_____
Date

By  J.Prado _____
Deputy Clerk

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (08/13)          NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| Carpenters Southwest Administrative Corporation, a California non-profit corporation; and Board of Trustees for the Carpenters Southwest Trusts, | Arciero Brothers, Inc., a California corporation, also known as Arciero Bros., Inc.; and Does 1 through 10, inclusive, |

| (b) County of Residence of First Listed Plaintiff    Los Angeles | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Jodi Siegner, Bar #102884 and Varand Vartanian, Bar #265912 DeCarlo & Shanley, a Professional Corporation 533 S. Fremont Avenue, 9th Floor, Los Angeles, CA 90071-1706 Phone:213-488-4100 & Fax:213-488-4180 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ 645,383.03

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) 29 U.S.C. 1132 (Section 502 of the Employee Retirement Income Security Act, as amended).This is a civil action to collect delinquent fringe benefit contributions due under the provisions of a collective bargaining agreement, and for failure to pay contractor's license bond.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☒ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY:    Case Number:

| CV-71 (11/13) | CIVIL COVER SHEET | Page 1 of 3 |
|---|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?**<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☒ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☐ NO    ☒ YES

If yes, list case number(s):   CV93-2036 DT(Ex)  and  CV94-2415 DT(Ex)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

| **X. SIGNATURE OF ATTORNEY** **(OR SELF-REPRESENTED LITIGANT):** | *Jodi Siegner* | DATE:  January 7, 2014 |
| --- | --- | --- |

JODI SIEGNER, DeCARLO & SHANLEY, Attorneys for Plaintiffs

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |